IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT L. BUGGS, SR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO LIQUOR COMMISSION; )<br>UNITED STATES ATTORNEY GENERAL; )<br>UNITED STATES ATTORNEY; )<br>ILLINOIS DEPARTMENT OF PUBLIC AID; )<br>DEPARTMENT OF CHILDREN AND FAMILY SERVICES; )<br>THE CHICAGO POLICE DEPARTMENT; )<br>THE SOCIAL SECURITY ADMINISTRATION; )<br>THE COOK COUNTY GUARDIAN OFFICE; )<br>THE COOK COUNTY STATE'S ATTORNEY'S OFFICE; )<br>U.S. INTERNAL REVENUE SERVICE; )<br>C-TRUCK; )<br>THE STATE OF ILLINOIS; )<br>THE ILLINOIS STATE LIQUOR COMMISSION; )<br>MAYOR RICHARD M. DALEY; )<br>THE CITY OF CHICAGO, ILLINOIS; )<br>COOK COUNTY ILLINOIS; )<br>CLERK OF THE CIRCUIT COURT OF COOK COUNTY; )<br>SECRETARY OF STATE OF ILLINOIS; and )<br>CITY OF BELLWOOD, )<br>)<br>Defendants. ) | Case No. 06 C 1258<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert L. Buggs, Sr., filed, *pro se*, an Amended Complaint against nineteen Defendants (including several federal, state, and municipal entities/agencies), alleging "Judicial Quagmire (Full Circle) Federal Questions." Presently before the Court are multiple Defendants' motions to dismiss.

## BACKGROUND

The Amended Complaint alleges Defendants' involvement in a series of events that appear to have spanned over two decades. The Amended Complaint states various allegations against the City of Chicago, Mayor Richard M. Daley, the Chicago Liquor Commission, and the Chicago Police Department. Proceeding chronologically, in 1980, then-State's-Attorney (now Mayor) Richard M. Daley improperly prosecuted a criminal case involving the theft of the Plaintiff's semi-tractor trailer rig, causing Plaintiff approximately $330,000 in damages. The Plaintiff alleges that because an improper warrant was issued, the accused was released, allegedly after admitting guilt; and the truck was never recovered.

In 1990, the Plaintiff bought a "bar business & building." According to the Plaintiff, the City acted improperly regarding Plaintiff's attempt to obtain a liquor license. The City told the Plaintiff to wait for five months when the prior owners' license expired; at which point, the Plaintiff was incapable of obtaining a license because, in the meantime, a new city ordinance came into effect. The Plaintiff asserts that he was constantly "harassed" and arrested by a Chicago Police Sergeant and fined $500 for operating without a license while Plaintiff was operating pursuant to a private club license from the State. Allegedly, at the time of Plaintiff's arrest and imposition of the $500 fine, the presiding judge ordered the City to issue a liquor license to the Plaintiff. The Plaintiff never received the license but was referred to State and City Liquor Commissions. The Plaintiff states, "The Illinois Liquor Commission followed suit to the Chicago Liquor Commission even though everyone was caught in a full circle judicial quagmire. The Chicago Police Department lied to the Illinois Liquor Commission and they both

are guilty of slander in order to stop me from running my own business and the lost of all my property."

Later in 1990, the Plaintiff bought the "Phase II Lounge." The Plaintiff was denied a liquor license and was forced to foreclose and file bankruptcy. Allegedly, he lost over $300,000 worth of merchandise and equipment and was quoted a price of $850,000 to replace his "bar business building," which he claims was worth two million dollars but was now gone. While the Plaintiff alleges that he was then fined numerous times in various amounts, he does not provide any dates, cases, or charges given. He only states: "then they fined me $11,500 dollars and destroyed my marriage and the lives of my children . . . then they had the nerve to fine me $10,500 dollars and ordered me to put in a $30,000 dollar kitchen which I never got to use." The Plaintiff did attach as exhibits to his Amended Complaint a 2002 Affidavit for Wage Deduction Order for a 2001 judgment in favor of the City; and a 2000 administrative hearing finding, decision, and order, which appears to be a property-upkeep violations case. However, the amounts stated in those exhibits ($10,050 and $657) do not support any of the dollar amounts alleged in the body of the Amended Complaint. Finally, in 1997, the Plaintiff paid his property taxes; but in 1998, he learned that his property had been sold for $35. The Plaintiff had to pay $1,500 to get his property back, which he lost for the second time due to child-support payment arrearages.

Second, the Plaintiff alleges a series of violations by the Department of Healthcare and Family Services ("DHFS"), the Department of Children and Family Services ("DCFS"), and the Clerk of the Circuit Court of Cook County. He asserts that his wife, Saflora Stewart, received public aid sometime around 1988 from the DHFS but was not qualified to do so because the Plaintiff was making $60,000 per year, enough to support her and their three minor children.

3

Soon after that, his wife disappeared for over sixteen years. According to the Plaintiff, the DHFS was "responsible for wiping out [his] constitutional rights for being a father." Now, the Plaintiff claims, after sixteen years, the DHFS has no right to seek $51,400 in back-pay child support, which caused him to lose his home and business.

On November 30, 2000, the Plaintiff, his attorney, the public guardian, the assistant State's Attorney, and the mother of the Plaintiff's children were all present for a bench trial in the Circuit Court of Cook County on the Plaintiff's child support obligations and visitation rights. The state court found that the Plaintiff was $59,400 in arrears on his child support obligations as of December 31, 1999. The state ordered that, effective November 30, 2000, the Plaintiff was required to make support payments to the Illinois State Disbursement Unit in the amount of (1) $183.36 for current support and (2) $5.00 per week on the $59,400 judgment, which was granted by the state court against the Plaintiff to the DHFS. In accordance with the November 30, 2000 order, the DHFS notified the Plaintiff's employer of the order for withholding. Here, the Plaintiff implicates the State's Attorney's Office and the Clerk of the Circuit Court of Cook County for ordering to take payroll deductions.

Plaintiff also states that his wife "threatened to kill her children and 16 years later DCFS gives her foster children and she ends up killing one of them." Attached to the Plaintiff's Amended Complaint is a death certificate of Allen Kalfus, who died on February 22, 2001, at the age of six. Hypothermia and immersion in cold water are listed as the immediate causes of death. Consequently, after the mother was in custody, the Plaintiff was allegedly contacted by the Clerk's office about certain money. He instructed the Clerk's office to "put a brick on it. I was coming for my money once I went to court." Though Plaintiff fails to specify when, he states that the children are now adults.

Finally, under the heading of "There Shall Be No Taxation Without Representation," the Plaintiff names the U.S. Internal Revenue Service as one of the Defendants. Under a theory he claims is a "full circle judicial quagmire," the Plaintiff demands, "I would like to have all my money from your department at once. I have not had any representation from my government or by my government since 1980 due to the formation of a Full Circle Judicial Quagmire."

## ANALYSIS

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004) (*Sprint*). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (alteration in *Bell Atlantic*). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14." *E.E.O.C. v. Concentra Health Serv., Inc.*, __ F.3d __, __ (7th Cir. 2007), 2007 WL 2215764 (7th Cir. Aug. 3, 2007). This would also include the plaintiff's "responsibility to clearly allege facts that invoke federal court jurisdiction." *Sprint*, 361 F.3d at 1001.

Plaintiff's Amended Complaint fails to meet the above requirements. The Amended Complaint does not give any of the Defendants fair notice of what the claims are or the grounds upon which they rest. Many of the Defendants named in the caption of the Amended Complaint

5

are not included in any of the allegations of misconduct in the Amended Complaint. Plaintiff fails to identify any recognized cause of action – "Judicial Quagmire (Full Circle)" is not a recognized cause of action – or any basis of this Court's jurisdiction. Nor do any of Plaintiff's allegations plausibly suggest that Plaintiff has a right to relief. Accordingly, Plaintiff has failed to sufficiently plead a cause action or that this Court has jurisdiction over whatever claims Plaintiff may be trying to bring.[1]

## CONCLUSION

For the foregoing reasons, the Plaintiff's Amended Complaint is dismissed without prejudice. Plaintiff is given leave to file a Second Amended Complaint, if he can do so consistent with Rule 11, within 14 days of this Order. Defendants' motions to dismiss are denied as moot.

Dated: August 22, 2007

JOHN W. DARRAH
United States District Court Judge

---

[1] The multiple motions to dismiss argue that Plaintiff's Amended Complaint should be dismissed for lack of subject-matter jurisdiction and/or for failure to state a claim. Most of the Defendants' arguments are based on interpretations of the allegations and what Plaintiff "may" be alleging. For example, *if* Plaintiff alleges a Section 1983 cause of action, that cause of action would be time barred. Because Plaintiff's Amended Complaint fails to meet the requirements of Rule 8(a)(2), and the Court will not speculate what causes of action Plaintiff may be trying to allege, the Defendants' specific arguments are not addressed.